DAYLE ELIESON
United States Attorney
CHRISTOPHER BURTON
Assistant United States Attorney
Nevada Bar No. 12940
District of Nevada
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Tel: (702) 388-6336 / Fax: (702) 388-5087
Christopher.Burton4@usdoj.gov

*Representing the United States of America*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>      Plaintiff,<br><br>      v.<br><br>BENYIAHIA HEBBAR,<br><br>      Defendant. | Case No. 2:16-cr-00328-JCM-GWF<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA (ECF NO. 75)** |

**CERTIFICATION:  This Response is timely filed.**

The United States of America, by and through DAYLE ELIESON, United States Attorney, and CHRISTOPHER BURTON, Assistant United States Attorney, hereby submits this response in opposition to the Defendant's Motion to Withdraw Guilty Plea. Because Defendant fails to demonstrate a justification that would warrant withdrawal of his plea, his Motion should be denied.

. . .

## PROCEDURAL HISTORY

On August 15, 2016, Defendant was charged by Criminal Complaint with one count of *Possession of a Machine gun*, in violation of Title 26, United States Code, Sections 5861(d) and 5871. ECF No. 1. On November 9, 2016, Defendant was charged by Indictment with *Unlawful Receipt or Possession of an Unregistered Firearm*, in violation of Title 26, United States Code, §§ 5812, 5861(b), and 5871. ECF No. 18.

Defendant filed a Motion to Dismiss on June 8, 2017. ECF No. 47. The Government filed a Response on June 16, 2017. ECF No. 48. A Report and Recommendation that the Defendant's Motion be denied was issued on July 19, 2017. ECF No. 52 (Minutes). That Report and Recommendation was adopted on August 18, 2017. ECF No. 54 (Minutes).

Defendant pleaded guilty pursuant to a plea agreement on September 29, 2017. ECF No. 62 (Minutes).[1] An executed plea agreement was filed the same day. ECF No. 64.

On December 14, 2017, Defendant's counsel filed a Motion to Withdraw as Attorney. ECF No. 65. The Motion was unopposed and granted on December 20, 2017. ECF No. 67 (Minutes). Dustin Marcello was subsequently appointed to represent Defendant. ECF No. 70 (Minutes).

---

[1] The Government has ordered the transcript from this proceeding but has not yet received it. However, undersigned was present at the change of plea hearing and will make representations based on recollection of that proceeding.

On February 19, 2018, Defendant filed the instant Motion to Withdraw Guilty Plea. ECF No. 75. The Government's Response follows.

**STATEMENT OF THE FACTS**

From May to August 2016, agents from the Federal Bureau of Investigation conducted an investigation of the Defendant in connection with several home invasion robberies the Defendant was planning. This investigation included the use of multiple confidential sources. A confidential source ("CS-1") was introduced to the Defendant and the two had surreptitiously recorded contacts beginning in May 2016. CS-1 introduced the Defendant to another confidential source ("CS-2"). However, during the course of the investigation, contact between CS-2 and the Defendant ceased after a short period. CS-1 then introduced the Defendant to another confidential source ("CS-3") in June 2016. Shortly after CS-1 introduced CS-3 to the Defendant, CS-1 left the jurisdiction and CS-3 and the Defendant continued to have contact.

On August 4, 2016, and while CS-1 was no longer in the jurisdiction, Defendant met with CS-3. During that recorded meeting, Defendant told CS-3 that he recently lost a lot of money gambling and that he wanted to rob an unidentified male. Defendant advised CS-3 that he needed a gun for the robbery and specifically stated he wanted an Uzi or AK-47. CS-3 told Defendant that he/she could get a non-registered gun that is "clean," meaning it had not been used in a murder and provide it to Defendant. Defendant expressed interest and CS-3 agreed to look into it.

On August 11, 2016, CS-3 again met with Defendant without CS-1 being present. During that recorded meeting, CS-3 showed Defendant photos of a fully automatic AR-15 with a scope and a suppressor and asked Defendant if that was the type of gun Defendant was looking for. Defendant replied "yeah." CS-3 told Defendant the gun was fully automatic gun with "no noise" (meaning it had a suppressor) and showed him the fully automatic option and the suppressor depicted in the photo. Defendant acknowledged seeing the suppressor and that the AR-15 had a fully automatic option. Defendant asked CS-3 if the gun could be broken into pieces, and later asked if the gun had "bullets and everything." CS-3 specified that it was a "fully" automatic AR-15 with a silencer. CS-3 also advised Defendant that the gun was worth between $20,000 and $30,000 on the black market and that it had been stolen from a train. CS-3 and Defendant agreed on a method of payment for the firearm and planned to meet the next morning for Defendant to pick up the gun.

On August 12, 2016, Defendant parked next to CS-3's vehicle in the parking lot of a business in Las Vegas. Defendant and CS-3 exited their vehicles and CS-3 removed the case with the gun from CS-3's vehicle and placed it in the trunk of Defendant's vehicle. CS-3 opened the case, showed Defendant the gun, then closed the case. Defendant stated, "I should put something to cover," and then asked CS-3 what caliber the gun was. CS-3 responded "223," referring to the size of the ammunition for the gun. Defendant then closed the trunk and entered the driver seat of his vehicle but was arrested by agents before he exited the parking lot. The

gun was recovered from Defendant's vehicle. The entire interaction on August 12, 2016, between the Defendant and CS-3 was also recorded.

Defendant was transported to the FBI's office where he was advised of his rights per FBI FD-395 form. Defendant agreed to waive his rights, signed the waiver, and agreed to a recorded interview. During the interview, Defendant admitted that he received and was in possession of the firearm and was thinking about re-selling it.

## **ARGUMENT**

"Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a plea of guilty prior to the imposition of sentence if he can show a fair and just reason for requesting the withdrawal." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008) (quoting *United States v. Hyde*, 520 U.S. 670, 676-77 (1997)). "The defendant is not permitted to withdraw his guilty plea simply on a lark." *Id.* "In this Circuit, fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *Id.* However, allowing a defendant "to withdraw his guilty plea merely because he changed his mind would undermine Rule 11's purpose and reduce plea proceedings to a time-consuming formality with no lasting effect." *United States v. Rios-Ortiz*, 830 F.2d 1067, 1070 (9th Cir. 1987). A court should consider various factors in determining whether withdrawal from a guilty plea is warranted, including: "[w]hether the movant has asserted his legal innocence," and "[t]he

amount of time which has passed between the plea and the motion." *McTiernan*, 546 F.3d at 1167 (quoting Fed. R. Crim. P. 32 advisory committee note). "The defendant bears the burden of establishing that withdrawal is warranted. *Id.* at 1166-67.

Here, the Defendant asserts the following as grounds to withdraw his guilty plea: 1) His counsel was ineffective in describing various unspecified legal defenses; 2) He has subsequently learned of allegations of misconduct in an unrelated case against one of the confidential sources involved in this case; 3) He was pressured into pleading guilty by threats from the Government that it would seek a more stringent sentence if the case proceeded to trial and/or bring additional charges. These alleged bases fail, independently as well as cumulatively, to justify withdrawal of the Defendant's plea.

First, Defendant fails to demonstrate any failure to discuss and understand various unspecified legal defenses prior to entry of his plea. Although this Court should not determine whether an asserted legal defense would ultimately prevail, it is required to decide whether an asserted legal defense, if known at the time of the guilty plea, could have plausibly persuaded a *reasonable* defendant to not plead guilty. *McTiernan*, 546 F.3d at 1167-68; *see also United States v. Showalter*, 569 F.3d 1150, 1158 (9th Cir. 2009) ("In *McTiernan*, we stated that *bad* legal advice can constitute a fair and just reason justifying withdrawal of a defendant's guilty plea.") (emphasis added). Defendant contends counsel was ineffective in not discussing potential legal defenses, however the Defendant fails to articulate what legal defenses he now believes exist. To the extent the Defendant argues that he is legally

innocent because he did not "intend[] to engage in illegal conduct," (ECF No. 75, p. 12), such is not sufficient to demonstrate a plausible legal defense. The Defendant's argument essentially boils down to ignorance that his actions were against the law, which is not a legal defense. *Bryan v. United States*, 524 U.S. 184, 192-93, 118 S. Ct. 1939, 1945-46 ("As Justice Jackson correctly observed 'the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.'") (quoting *United States v. Bailey*, 444 U.S. 394, 100 S. Ct. 624 (1980)). As ignorance of the law is no excuse, it is not plausible that a reasonable person in Defendant's position would have been persuaded by such an untenable defense and insisted upon trial.

Allegations of misconduct against one of the confidential sources in an unrelated case likewise does not justify granting withdrawal of the plea agreement. The Defendant conflates all three of the confidential sources involved in this case and even incorrectly suggests that the allegations of misconduct were brought forward as a result of defense investigation into this case. *See* ECF No. 75, p. 10. In truth, months after the Defendant pleaded guilty, a defendant in a wholly unrelated criminal case made allegations that CS-1 acted improperly *in that case*. These allegations, which are pending investigation, have no connection to the instant case and do not provide a basis for the requested relief. *See generally*, *United States v. Novaton*, 271 F.3d 968, 1006-07 (11th Cir. 2001) (upholding the inadmissibility of impeachment evidence relating to collateral allegations of misconduct that are not

confirmed, or for which no sanctions have been imposed); *see also United States v. Bailey*, 696 F.3d 794, 800 fn. 6 (9th Cir. 2012) (same and collecting cases).

First, although CS-1 was the first confidential source to have contact with the Defendant in this case and introduced the Defendant to CS-3 in June 2016, CS-1 left the jurisdiction very soon after CS-3 was introduced to the Defendant and had no further direct involvement. Specifically, CS-1 was not involved, or even present, during the August interactions that form the factual basis for the charged offense. During those recorded interactions, the Defendant asked a completely different confidential source, that is CS-3, to provide him with a fully automatic firearm, and then received the same. Further, as noted *supra*, all of the August interactions were recorded, significantly reducing the strength of a credibility challenge to *any* of the confidential sources. Finally, after the Defendant was arrested, he was interviewed and admitted to the elements of the offenses. Indeed, as noted by the Defendant (*see* ECF No. 75, p. 8), this is a straightforward case that would likely only require admission of the testimony of the confidential source that conducted the August recordings (CS-3), the recordings themselves, and the Defendant's post-arrest statements. As it is unlikely the testimony of CS-1 would be required at trial, and because the testimony of CS-3 would be corroborated by his/her recorded interactions with the Defendant as well as the Defendant's own post-arrest statements, any pending allegation of impropriety against CS-1 in an unrelated case does not warrant withdrawal of Defendant's guilty plea.

1    Finally, the Defendant's claims that he pleaded guilty under the improper

2   threat of a more stringent sentence and additional charges is belied by the record

3   and otherwise without merit. The Government notes at the outset that some of the

4   conditions of the plea agreement itself relate to the Defendant's arguments. For

5   example, because of the Defendant's guilty plea, the parties agreed that his United

6   States Sentencing Guideline calculation should be reduced by three (3) points. ECF

7   No. 57, p. 7. This agreed reduction would naturally decrease the sentence the

8   Government would recommend at sentencing, as the Government agreed to

9   recommend a sentence "at the low end of the Sentencing Guidelines range[.]" *Id.* at

10   p. 10. Additionally, the Government also expressly agreed in the plea agreement

11   that it would not bring additional charges arising out of this investigation that

12   culminated in the plea agreement. *Id.* at p. 3. However, to the extent the

13   Defendant's arguments can be read to relate to express terms of the plea agreement,

14   it is axiomatic that a valid plea agreement can inform a Defendant's decision to

15   plead guilty. *See* Fed. R. Crim. P. 11(c)(1). Defendant does not challenge the validity

16   of the plea agreement itself and the plea agreement was legally proper.

17    To the extent Defendant's claims can be read to relate to conditions and terms

18   or influences outside the express terms of the plea agreement, such claims are belied

19   by the record. Contrary to the Defendant's claims that he was threatened or forced

20   to plead guilty, he affirmed in signing the plea agreement that:

21          The defendant understands that he alone decides whether
           to plead guilty or go to trial and acknowledges that he has
22          decided to enter his guilty plea knowing of the charges
           brought against him, his possible defenses, and the
23

> benefits and possible detriments of proceeding to trial. The defendant also acknowledges that he decided to plead guilty voluntarily and that no one coerced or threatened him to enter into this Plea Agreement.

*Id.* at p. 12. Further, as part of the Plea Agreement, the United States and Defendant confirmed that the Plea Agreement resulted from an "arms-length negotiation" and that there were no promises, agreements, or conditions outside of those set forth in the written plea agreement. *Id.* at pp. 13-14. Likewise, during the plea canvass itself, Defendant affirmed that no one forced or threatened him in order to get him to plead guilty and that he was doing so of his own volition. ECF No. 62 (Minutes). As the Defendant affirmed in signing the plea agreement as well as during the plea canvass, he was not forced or coerced into pleading guilty and did so of his own choice pursuant to a valid plea agreement. Any claim to the contrary is thus belied by the record and should be rejected.

## **CONCLUSION**

Based on the foregoing, the Government respectfully requests Defendant's Motion be denied.

**DATED** this 1st day of March, 2018.

Respectfully,

DAYLE ELIESON
United States Attorney

*/ s / Christopher Burton*

_____
CHRISTOPHER BURTON
Assistant United States Attorney

**<u>CERTIFICATE OF SERVICE</u>**

I certify that I am an employee of the United States Attorney's Office.  A copy of the foregoing **RESPONSE TO DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA** was served upon counsel of record, via Electronic Case Filing (ECF).

**DATED** this 1st day of March, 2018.


/ s / *Christopher Burton*
_____
CHRISTOPHER BURTON
Assistant United States Attorney

11