1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

                            Plaintiff,

    v.

BENYIAHIA HEBBAR,

                            Defendant.

Case No. 2:16-CR-328-JCM-GWF

**REPORT AND RECOMMENDATION**

**Re: Motion to Withdraw
    Guilty Plea (ECF No. 75)**

12      This matter is before the Court on Defendant Benyiahia Hebbar's Motion to Withdraw

13  Guilty Plea (ECF No. 75), filed on February 19, 2018.  The Government filed its Response (ECF

14  No. 79) on March 1, 2018, and Defendant filed his Reply (ECF No. 81) on March 7, 2018.  The

15  Court conducted a hearing in this matter on April 19, 2018.

16                              <u>**BACKGROUND**</u>

17      Defendant Hebbar is charged in a one count criminal indictment filed on November 9,

18  2016 with unlawful possession of an unregistered firearm in violation of 26 U.S.C. § 5841,

19  5861(d) and 5871.  *Indictment* (ECF No. 18).  On September 29, 2017, Defendant entered into a

20  written Plea Agreement Under Fed.R.Crim.P. 11(c)(1)(A) and (B) pursuant to which he agreed

21  to plead guilty to Count One of the Indictment.  *Plea Agreement* (ECF No. 64).  Under Section

22  IV.D. of the Plea Agreement, Defendant admitted the following facts:

23      From May to August 2016, FBI agents conducted an undercover operation of the

24  Defendant in connection with several home invasion robberies the Defendant was planning.  On

25  August 4, 2016, a confidential informant met with Defendant and conducted several hours of

26  consensual recording, during which Defendant urged the confidential informant to complete a

27  planned home invasion robbery.  Defendant then stated that he wanted a firearm so that he could

28

complete the crime himself.  The confidential informant told Defendant that he could obtain a new, but unregistered firearm from Arizona.  On August 5, 2016, the Defendant again spoke to the confidential informant and stated that he wanted an "AK47" or an "uzi."  On August 8, 2016, Defendant told the confidential informant that he wanted a fully automatic weapon.

Defendant met with the confidential informant on August 11, 2016.  The confidential informant showed Defendant several photos of a fully automatic AR-15 with an attached suppressor.  The confidential informant confirmed that the photos depicted a semi-automatic and a fully automatic option and Defendant acknowledged seeing that in the photos.  The confidential informant stated that the weapon had been stolen from a train.  After Defendant asked about the price for the weapon, the confidential informant told him he would give it to him in connection with the planned robbery.  The Defendant agreed to meet with the confidential informant the next day to pick up the weapon.

On August 12, 2016, the Defendant and the confidential informant met and parked their cars next to each other.  The confidential informant opened the trunk of his car and showed Defendant a fully automatic Colt Model AR-15, 5.56 mm caliber rifle which had been temporarily disabled for safety.  The confidential informant moved the gun to the trunk of Defendant's car.  Defendant asked if the gun was used and what size bullet it uses.  Defendant stated that he should cover the gun with something to conceal it.  Defendant returned to the front seat of his vehicle, at which point he was surrounded by law enforcement agents and arrested. *Plea Agreement* (ECF No. 64), at 4-6.  The Plea Agreement further stated that "Defendant admits knowingly possessing the above firearm.  The Defendant also admits that he was aware that the firearm was not registered to him in the National Firearms Registration and Transfer Record and he had not registered the Firearm with the National Firearms Registration and Transfer Record." *Id.* at 6.

Defendant Hebbar appeared before the District Judge on September 29, 2017 for change of plea.  Defendant was sworn to tell the truth.  He stated that he understood that his answers to the Judge's questions were subject to the penalties of perjury if he did not tell the truth.

2

1  *Transcript of Proceedings* (ECF No. 80), at 2:24-3:1-6.  The District Judge asked Defendant

2  whether he had ample opportunity to discuss his case with his attorney, John George, and

3  whether he was satisfied to have Mr. George as his attorney.  Defendant answered yes to both

4  questions.  *Id.* at 6:8-13.  He also stated that he discussed with his attorney the charge in the

5  indictment to which he intended to plead guilty.  *Id.* at 9:1-4.  The District Judge stated that

6  Ninth Circuit model jury instruction requires the government to show that the defendant knew

7  the features of his AR-15 that brought it within the scope of the National Firearms Registration

8  Act.  *Id.* at 10:3-6.  The District Judge asked Defendant if he was aware of the features of the gun

9  and that it was fully automatic.  Defendant responded that it wasn't fully automatic and was,

10  instead, semi-automatic.  *Id.* at 10:8-16.  Government's counsel thereupon stated that Defendant

11  was incorrect, and that the firearm was fully automatic.  Government's counsel also stated that

12  Defendant spoke with the confidential informant about the firearm being fully automatic and was

13  shown that it had a fully automatic and semi-automatic option.  *Id.* at 10:17-21.  The District

14  Judge asked Defendant if the firearm had such a switch on it.  *Id.* at 11:2-3.  Defendant

15  responded: "I don't know anything about gun, Your Honor.  And the informant, when he show it

16  to me, he – that's not what he say.  You know, he says semi-automatic."  *Id.* at 11:4-6.

17  Government's counsel reiterated that the firearm was an automatic weapon.  He further stated

18  that if Defendant was not willing to admit that the weapon was fully automatic, "then I think we

19  are at a standstill as far as that canvass."  The Court agreed and asked Defendant's counsel if he

20  wished to take a recess to discuss the matter further with his client.  *Id.* at 11:9-24.  The hearing

21  was then briefly recessed so that Defendant could confer with his attorney.  *Id.* at 11:19-25; 12:1-

22  2.

23       After the hearing resumed, the following exchange occurred between the District Judge

24  and Defendant:

25          The Court:  The question is he has to know that it was fully automatic.
           Do you concede that it was fully automatic?

26

27          The Defendant: Yes, Your Honor.

28

3

1

2

> The Court:  All right.  And I don't want to force you.  I'm not trying to force you into anything.  This is your trial, you know, so – so, you tell me.  You were aware that the AR-15 was fully automatic; is that correct?

3

> The Defendant:  Yes, sir.

4

5

6

> The Court:  All right.  All right. You understand that all those elements I just read, including the fact that it's fully automatic, is what the government would have to prove if we went to trial in order for you to be convicted of the crime charged in Count One of the Indictment.  Do you understand that?

7

> The Defendant:  Yes, sir.

8

*Transcript of Proceedings* (ECF No. 80), at 12:6-21.

9

10

11

12

13

14

15

16

17

During the colloquy with the Court, Defendant stated that he had not been threatened or forced by anyone to plead guilty.  He had not been told that more serious charges would be brought against him, or some other adverse action would be taken against him if he did not plead guilty.  He was not pleading guilty because of any coercion or fear of codefendants.  *Id.* at 15:10-24.  Defendant acknowledged that his willingness to plead guilty was the result of prior negotiations between his attorney and the Government's attorney and was the subject of a written plea agreement.  Defendant stated that he read the plea agreement before he signed it and that he understood the terms of the agreement.  He acknowledged that he discussed the agreement with his attorney, who answered all of his questions.  *Id.* at 16:7-14; 17:1-12.

18

19

20

21

22

23

24

25

26

27

The District Judge also reviewed the factual allegations set forth in Section IV.D. of the Plea Agreement.  He asked Defendant's counsel if he agreed with the written summary of the government's evidence in the plea agreement.  Mr. George stated that he did.  The Judge also asked Defendant if he agreed with the factual summary in the plea agreement and Defendant stated that he did.  *Id.* at 25:12-19.  Defendant also stated that the factual allegations in the plea agreement were correct and he admitted to them on the record.  *Id.* at 26:20 through 29:11. The District Judge returned to the subject of the firearm being automatic.  He asked Defendant if he understood that automatic meant that if he pulled the trigger, the weapon would keep firing.  Defendant answered yes.  *Id.* at 29:13-23.  The Court conditionally accepted Defendant's guilty plea and scheduled sentencing for December 28, 2017.  *Id.* at 30:5 through 32:6.

28

On December 14, 2017, Defendant's counsel, Mr. George, filed a motion to withdraw as Defendant's counsel. *Motion to Withdraw* (ECF No. 65). During the December 20, 2017 hearing, Mr. George advised the Court that Defendant wanted to withdraw his guilty plea, and that Mr. George did not believe he could represent him on such a motion. *See Minutes of Proceedings* (ECF No. 67). The Court granted the motion and appointed attorney Dustin Marcello to represent Defendant. *Minutes of Proceeding* (ECF No. 70); *Order Appointing Counsel* (ECF No. 72). Mr. Marcello then filed the motion to withdraw guilty plea on behalf of the Defendant. On March 15, 2018, Defendant filed a motion to substitute attorney William Gamage as retained counsel in place of Mr. Marcello. *Motion to Substitute Attorney* (ECF No. 83). The Court granted the motion on March 29, 2018. *Minutes of Proceedings* (ECF No. 88).

In his motion to withdraw guilty plea, Defendant claims that Mr. George spoke to him only in general terms, and never provided specific information or advice about a defense strategy. He claims that Mr. George yelled at him and mistreated him, such that he believed he was bullied into taking the plea offer. Defendant claims he never reviewed the United States Code. He was not provided with information about the confidential human source, and was never advised that he could file a motion to dismiss the indictment based on Government misconduct for using a lying informant. Defendant also claims that Mr. George told him that if he did not plead guilty, Mr. George would not ask questions at trial, and that Defendant would be convicted and spend more time in prison than if he pled guilty. Mr. George also told him that he would have to admit guilt in order to present a defense. Defendant further claims that the prosecutor threatened to file additional charges against him if he did not plead guilty and would seek a more stringent sentence, and add a charge for possession of a machine gun. *Motion to Withdraw Guilty Plea* (ECF 75), at 4-5.

Defendant asserts in his reply brief that he never asked to purchase an AR-15, but instead attempted to purchase a standard hunting rifle that was not covered under 26 U.S.C. § 5812. He was led to believe he would purchase a legal firearm. He was not seeking to purchase a firearm for an illegal purpose. Defendant also asserts that he did not possess the firearm and the

1   Government entrapped him by having the confidential informant show up with an unregistered

2   firearm that was not sought by him.  He also argues that the Government prevented him from

3   complying with the law because he intended to register the firearm, but was prevented from

4   doing so by being arrested.  *Reply* (ECF No. 81), at 2-3.

5            The Government states in its response that the FBI conducted an investigation of

6   Defendant from May to August 2016 in regard to several home invasion robberies he was

7   allegedly planning.  The investigation included the use of multiple confidential sources ("CS's").

8   CS-1 was introduced the Defendant and had surreptitiously recorded contacts with him

9   beginning in May 2016.  CS-1 introduced Defendant to CS-2.  Defendant's contact with CS-2

10   ceased after a short period.  CS-1 then introduced Defendant to CS-3 in June 2016.  Shortly after

11   this introduction, CS-1 left the jurisdiction and CS-3 and Defendant continued to have contact.

12   The events described Section IV.D. of the Plea Agreement involved CS-3 and Defendant.

13   *Government's Response* (ECF No. 79), at 3-5.  The Government asserts that Defendant's

14   allegations regarding improper conduct by a confidential source do not relate to this case.

15   According to the Government: "In truth, months after Defendant pleaded guilty, a defendant in a

16   wholly unrelated criminal case made allegations that CS-1 acted improperly *in that case*.  These

17   allegations, which are pending investigation, have no connection to the instant case and do not

18   provide a basis for the requested relief."  *Id.* at 7.  The Government further states that CS-1 left

19   the jurisdiction shortly after CS-3 was introduced to Defendant, and CS-1 was not involved in or

20   present during the August 2016 interactions between Defendant and CS-3 which form the basis

21   for the indictment.  All of the August 2016 interactions were recorded, which significantly

22   reduces the strength of a credibility challenge to any of the confidential sources.  After his arrest,

23   Defendant was interviewed and admitted to the elements of the offense.  *Id.* at 8.

## DISCUSSION

25            A defendant may withdraw a plea of guilty after the court accepts the plea, but before it

26   imposes sentence, if the defendant can show a fair and just reason for requesting the withdrawal.

27   Fed.R.Crim.P. 11(d)(2)(B).  The defendant bears the burden of establishing that withdrawal is

28

warranted.  *United States v. McTiernan*, 546 F.3d 1160, 1166-67 (9th Cir. 2008).  The decision whether to permit the withdrawal of a plea is solely within the discretion of the district court. *United States v. Showalter*, 569 F.3d 1150, 1154 (9th Cir. 2009) (citing *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003)).  While a defendant is not entitled to withdraw his guilty plea simply on a lark, the "fair and just" standard is generous and must be applied liberally. *McTiernan*, 546 F.3d at 1167 (citing *United States v. Hyde*, 520 U.S. 670, 676-77, 117 S.Ct. 1630 (1997)).  "'Prior to sentencing, the proper inquiry is whether the defendant has shown a fair and just reason for withdrawing his plea even if the plea is otherwise valid.'"  *Id.* (citing *United States v. Davis*, 428 F.3d 802, 806 (9th Cir. 2005)).

In regard to the guidelines for applying the fair and just standard, *McTiernan* quoted the Advisory Committee's Note to the predecessor provision in Rule 32:

> Although the terms "fair and just" lack any pretense of scientific exactness, guidelines have emerged in the appellate cases for applying this standard. Whether the movant has asserted his legal innocence is an important factor to be weighed, as is the reason why the defenses were not put forward at the time of original pleading. The amount of time which has passed between the plea and the motion must also be taken into account.

546 F.3d at 1167.

The court further stated that fair and just reasons include "inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, *or any other reason for withdrawing the plea that did not exist when the defendant entered his plea.*"  *Id.* at 1167 (quoting *Davis*, 428 F.3d at 805)).  Erroneous or inadequate legal advice may also constitute a fair and just reason for plea withdrawal, even without a showing of prejudice, when the motion to withdraw is made presentence.  *Id.*

In *McTiernan*, the defendant was charged with making a false statement to FBI agents by denying that he had hired a private investigator to illegally wiretap the telephone conversations of third persons.  The criminal charge against the defendant was based on a recorded conversation between defendant and the private investigator in which they discussed the illegal wiretapping.  The defendant asserted that his attorney failed to advise him prior to pleading

guilty of a possible basis for suppressing the recorded conversation.  In holding that this was a potentially valid reason for withdrawing the guilty plea, the court stated that the defendant was not required to show that the motion to suppress would have been granted.   Defendant's burden was only to show that proper legal advice could have at least plausibly motivated a reasonable person in his position not to have pled guilty if he had known about the grounds for the motion to suppress prior to pleading guilty.  *Id.* at 1168 (citing *United States v. Garcia*, 401 F.3d 1008, 1011-12 (9th Cir. 2005)).  The court remanded the case to the district court to determine whether knowledge of the potential motion to suppress could have plausibly motivated defendant to not plead guilty. The court also stated that defendant's "'failure to proclaim his innocence should not count against him when he seeks to withdraw his plea under the fair and just reason standard.'" *Id.* (citing *Garcia*, 401 F.3d at 1012).  It also found that defendant's seventeen-month delay in filing the motion to withdraw his guilty plea did not bar the motion where nothing in the record indicated that defendant's reasons for withdrawing his plea were not bona fide, or that the government would suffer great prejudice if the plea was withdrawn.  *Id.* at 1168-69.

In *United States v. Mayweather*, 634 F.3d 498, 505 (9th Cir. 2010), the court distinguished *McTiernan* on the grounds that there was a legitimate factual issue in *McTiernan* as to whether the defendant was advised of the potential suppression issue prior to pleading guilty. The defendant in *Mayweather*, however, had made it very clear to his attorney, prior to entering the guilty plea, that he wanted to pursue a motion to suppress evidence.  His guilty plea, therefore, did not result from lack of knowledge about the suppression issue.  *Id.* at 506.  The court further stated:

> The district court conducted a thorough Rule 11 proceeding, taking particular care to engage Mayweather and confirm his understanding of the proceeding. Moreover, Mayweather was an active participant, asking the court to explain that part of the plea agreement setting forth the bases for post-plea collateral attacks, and pointing out an inconsistency in the police report. When, however, Barnwell stated that his client was not pleading guilty "because of any illegally obtained evidence," Mayweather was conspicuously silent. While we recognize that even a perfect Rule 11 colloquy does not preclude a later plea withdrawal, *see Davis,* 428 F.3d at 806; *Garcia,* 401 F.3d at 1012, it is hardly a mere formality. A district court cannot be expected to accurately assess

whether a plea is knowing and voluntary unless the defendant candidly
conveys to the court what he knows. Mayweather failed to do that.

634 F.3d at 506.

The court further stated that "[w]e have never held that the rule also embraces
circumstances known to a defendant at the time of the guilty plea and we decline to do so now."
*Id.*

In *United States v. Showalter*, 569 F.3d 1150 (9th Cir. 2009), the court affirmed the denial
of defendant's motion to withdraw his guilty plea which was premised on the assertion that three
witnesses would testify that they did not believe defendant intended to defraud them.  The
witnesses, however, were known to defendant prior to his guilty plea.  The court contrasted these
circumstances with those in *United States v. Garcia*, *supra*, in which the defendant discovered a
new witness only after he pled guilty.  *Id.* at 1157 (citing *Garcia*, 401 F.3d at 1011-12).
*Showalter* also rejected the argument that a defendant should be allowed to withdraw his guilty
plea because the government exaggerated the strength of its case against him.  The court noted
that in *Brady v. United States*, 397 U.S. 742, 756-57,90 S.Ct. 1463 (1970), the Court stated that
"[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea
has been accepted that his calculus misapprehended the quality of the State's case or the likely
penalties attached to alternative courses of action."  *Id.* at 1155.

Defendant Hebbar alleges that his attorney failed to properly represent him and bullied
him into pleading guilty.  He also claims that the prosecutor threatened to file additional charges
against him and seek a more stringent sentence if he did not plead guilty.  *Motion* (ECF No. 75)
at 4-5.  These allegations are contradicted by Defendant's sworn statements during his plea
colloquy.  Defendant affirmed to the Court that he had ample opportunity to discuss his case with
his attorney, that he was satisfied to have Mr. George as his attorney, and that the attorney had
answered all of his questions.  Defendant also stated that he had not been threatened or forced to
plead guilty by anyone.  He had not been told that more serious charges would be filed against

9

1    him if he did not plead guilty.  He also stated that he had read the plea agreement before he

2    signed it, and had discussed the agreement with his attorney who answered his questions.

3            Defendant clearly had the opportunity to raise any concerns or objections to pleading

4    guilty during the September 29th hearing.  This is illustrated by the fact that after Mr. Hebbar

5    stated that the firearm was semi-automatic, the District Judge stated that he could not proceed

6    with the plea.  Defendant could have told the Judge at that point that he did not commit the crime

7    and that he was being pressured into pleading guilty.  Instead, after a brief recess to discuss the

8    matter with his attorney, Mr. Hebbar acknowledged that he understood the firearm was an

9    automatic weapon.  He also admitted each of the other factual allegations in the plea agreement.

10   Defendant's allegations against his former counsel and the prosecutor are not credible.  He has

11   not met his burden to support withdrawal of the guilty plea on these grounds.

12           Defendant also alleges, however, that he "was never advised that he could file a motion

13   to dismiss the case based on the Government's use of a lying informant to prosecute [him]."

14   *Motion* (ECF No. 75) at 5.  It is undisputed that the information regarding CS-1 was not

15   disclosed until after Defendant pled guilty.  The Government states that "months after Defendant

16   pleaded guilty, a defendant in a wholly unrelated criminal case made allegations that CS-1 acted

17   improperly *in that case*.  These allegations, which are pending investigation, have no connection

18   to the instant case and do not provide a basis for the requested relief."  *Government's Response*

19   (ECF No. 79), at 7.  The Government argues that impeachment evidence relating to collateral

20   allegations of misconduct that are not confirmed is inadmissible.  *Id.* at 7-8 (citing *United States

21   v. Novaton*, 271 F.3d 968, 1006-07 (11th Cir. 2001) and *United States v. Bailey*, 696 F.3d 794,

22   800 n. 6 (9th Cir. 2012)).

23           The fair and just standard for permitting a defendant to withdraw his guilty plea,

24   however, is a permissive one.  The defendant does not have to show that the information would

25   have resulted in his acquittal or the suppression of evidence.  His burden is to show only that the

26   newly discovered information could have plausibly motivated a reasonable person in his position

27

28

not to have pled guilty. *McTiernan*, 546 F.3d at 1168; *Garcia*, 401 F.3d at 1011-12.  In *Garcia*, the court stated:

> While newly discovered evidence wholly unrelated to a defendant's case would surely not entitle him to withdraw his guilty plea, the generous "fair and just reason" standard does not require that the defendant show that the new evidence exonerates him or that there is a reasonable probability he would not have been convicted had the case gone to trial. *See United States v. Morgan,* 567 F.2d 479, 493 (D.C.Cir.1977) ("Where the accused seeks to withdraw his plea of guilty before sentencing, on the ground that he has a defense to the charge, the District Court should not attempt to decide the merits of the proffered defense, thus determining the guilt or innocence of the defendant." (citation omitted)).

401 F.3d at 1011.

In *United States v. Bonilla*, 637 F.3d 980 (9th Cir. 2011), the defendant, a citizen of Mexico, pled guilty to a charge of possessing an unregistered firearm.  Prior to pleading guilty, the defendant's attorney failed to inform him that he would almost certainly be deported if he was convicted of the charge.  In holding that defendant was entitled to withdraw his guilty plea, the court stated that it was plausible that a reasonable person in defendant's position would not plead guilty if he knew that he would be deported as a result of the conviction.  The court did not analyze, however, whether defendant had a reasonable chance of being acquitted if he proceeded to trial.

The information regarding allegations of misconduct by CS-1 may not ultimately be admissible at Defendant Hebbar's trial, or, if admitted, may not make any material difference as to whether Defendant Hebbar will be convicted.  Although the relationship between the allegation against CS-1 and the charge against Defendant Hebbar is tenuous, it is plausible that a reasonable person in Mr. Hebbar position would not have pled guilty if he had known of this information and had an opportunity to explore it before deciding whether to plead guilty.  Under the liberal standard applied by the Ninth Circuit, the Court concludes that Defendant's discovery of this information after his guilty plea provides a fair and just reason for him to withdraw his guilty plea.

1    Defendant's motion to withdraw his guilty plea was timely filed.  Defendant's former

2    counsel notified the Court on December 20, 2017 that Defendant wanted to withdraw his guilty

3    plea. The five months that passed between Defendant's guilty plea and the filing of his motion to

4    withdraw the plea was substantially less than the seventeen-month delay in *McTiernan*.  The

5    Government has not asserted that its ability to prosecute this case has been prejudiced by the

6    passage of time since Defendant's guilty plea.  Accordingly,

7                                        **RECOMMENDATION**

8         **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Withdraw Guilty Plea

9    (ECF No. 75) be **granted**.

10        DATED this 26th day of April, 2018.

11

12                                          _____
                                            GEORGE FOLEY, JR.

13                                          UNITED STATES MAGISTRATE JUDGE

14                                        **NOTICE**

15        Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be

16   in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has

17   held that the courts of appeal may determine that an appeal has been waived due to the failure to

18   file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit

19   has also held that (1) failure to file objections within the specified time and (2) failure to properly

20   address and brief the objectionable issues waives the right to appeal the District Court's order

21   and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153,

22   1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

23

24

25

26

27

28

12